# IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF GEORGIA
### AUGUSTA DIVISION

AMY KING,                          *
                                   *
      Plaintiff,               *
                                   *
v.                                 *          CV 106-148
                                   *
AUGUSTA, GEORGIA, and              *
GERI SAMS, individually and        *
in her official capacity           *
as Director of Purchasing          *
for Augusta, Georgia.              *
                                   *
      Defendants.              *

---

**O R D E R**

---

Presently before the Court is Defendants' Motion for Summary Judgment. (Doc. no. 28.) For the following reasons, Defendants' motion is **GRANTED**.

## I. BACKGROUND

Plaintiff, a Caucasian, worked for Defendant Augusta-Richmond County ("Augusta") in the Purchasing Department from September 29, 2003 until she was terminated on or about November 13, 2003.[1] (See Pl.'s Dep. at 30, Exs. 5, 23; Sams Dep. at 110.) In her complaint, Plaintiff requests relief under 42 U.S.C. § 2000e *et seq.* ("Title VII"), 42 U.S.C. § 1981, and 42 U.S.C. § 1983 for race discrimination. (Compl. ¶ 51.) Specifically, Plaintiff claims that "race was a motivating factor" that caused her to be terminated in violation of her

---

[1]During orientation, Plaintiff was provided with Augusta's one-year probationary policy, informing her that she could be fired at any time, for any reason, or for no reason at all during her first year of employment. (Pl.'s Dep. at 31-32, 43; Sams Dep., Exs. 7-9.) This one-year probationary period applied to all new Augusta employees. Plaintiff understood that she was an at-will employee throughout her employment. (Pl.'s Dep. at 32.)

Title VII, Thirteenth and Fourteenth Amendment Rights. Plaintiff also brings claims under the First and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 for retaliatory termination for protected speech, and for deprivation of the liberty interest to speak on job training topics in an unrestricted manner. (See Doc. no. 56 at 1-2.)

According to Plaintiff, both Defendants played some role in these alleged wrongs. Defendant Augusta was Plaintiff's ultimate employer. Defendant Geri Sams, an African-American, was the Director of the Purchasing Department. (See Pl.'s Aff. ¶¶ 7-8.) The Purchasing Department is responsible for a variety of functions, including conducting a "sealed bid process" with outside vendors and making decisions to approve or disapprove various departmental requisition requests. (See id. ¶¶ 20-24.)

After Plaintiff interviewed with Sams and other members of the Purchasing Department staff, Augusta extended an offer of employment to Plaintiff to work as a Purchasing Technician. (Id. ¶ 3; see also Sams Dep., Ex. 5.) As a "Purchasing Tech" Plaintiff's basic job duties included processing purchase requests for amounts less than $5,000 and forwarding the appropriate paperwork to superiors for approval.[2] (Pl.'s Aff. ¶ 22; Sams Dep. at 26-27.)

Augusta notes Plaintiff's employment began somewhat inauspiciously because Plaintiff missed eight of her first fifteen workdays. Specifically, on October 2nd, 3rd, and 6th, 2003, Plaintiff missed work to attend a wedding. (Pl.'s Dep. at 43.) One week later, Plaintiff was out sick and did not work

---

[2]Aside from her ordinary duties, on one occasion Sams asked Plaintiff to type a transcript of a particular meeting which involved Augusta business matters. In her complaint, Plaintiff alleged that the transcript contained evidence of possible "fraud, waste, and abuse of federal grant money." (Compl. ¶ 33.)

for the entire week. (<u>See</u> Sams Dep. at 94-95, Ex. 5.)

Plaintiff claims that because she was the only Caucasian in the department, Sams scrutinized her more than the other staff members.[3] However, the record indicates that Sams' relationship with her entire department staff was, at best, strained. In fact, one member of the staff testified that Sams "treated everyone equally bad." (Peredo Dep. at 61.) Whether created by Sams or not, the record also indicates that there was an apparent tension within the Purchasing Department. According to another member of the staff, because the core of the Purchasing Department staff consisted of females, there was "[a]lways an issue about something. A lot of times it's petty. We seem to feed off of it." (Brooks Dep. at 44.)

For example, on October 27, 2003, in a meeting that involved the entire department, Plaintiff testified that Sams was "very angry" at Thelma Brooks[4] because "one of the requisitions had gone out with the wrong date." (Pl.'s Dep. at 61-62.) During this meeting, Sams also criticized the entire staff because a bid package had been accepted from an express delivery carrier but was not placed in the appropriate bid folder as required. (Brooks Dep. at 50-51.) According to Plaintiff, Sams told all the employees in the meeting that if they "couldn't do the job, that she would find someone who could." (Pl.'s Dep. at 62.)

Everybody in the staff meeting was upset with how Sams handled the incorrect date and express delivery issues. (Brooks

---

[3]At the time relevant to this action, aside from Sams, the core Purchasing Department staff consisted of Plaintiff, four African-Americans, one Hispanic, and one member of "Pacific Island" descent. (Pl.'s Aff. ¶¶ 8-16.)

[4]Ms. Brooks is an African-American. (Pl.'s Aff. ¶ 12.)

3

Dep. at 53.) As a result, on or about October 30, 2003, Plaintiff and five other Purchasing Department staff members signed a "grievance" against Sams.[5] According to Plaintiff, two members of the staff approached her with the grievance and asked her to sign it. (Pl.'s Dep. at 96.) Plaintiff testified that she read the grievance, "agreed with everything in [it]," and signed the document. (Id.) The grievance criticized Sams' management style and stated that Sams' behavior contributed to low morale and poor work quality within the Purchasing Department. (See Pl.'s Dep., Ex. 20.)

Also on or about October 30, Plaintiff and Sams had a "confrontation" regarding the placement of office furniture. Plaintiff testified that she and another staff member moved office furniture to a position in which Sams believed that the electrical cord was a potential hazard. Once Sams noticed this, she asked Plaintiff to move it. According to Sams, Plaintiff responded in an insubordinate way in front of other employees. (See Pl.'s Dep. at 68-70; Sams Dep. at 72-74, Ex. 5.)

On or about November 4th, Plaintiff allegedly came to work "very casually dressed." (Sams Dep., Ex. 5.) Plaintiff testified that when she "came in that morning, [she] was told [by members of the staff] that Sams wouldn't allow [them] to wear capri [pants] into the office . . . ." (Pl.'s Dep. at 45.) As a result, Plaintiff testified that when she saw Sams later that day, she told her that she "wouldn't wear [the capris] again." (Id.) Plaintiff admits that Sams was not harassing in any way and that she "didn't have a problem with the way [Sams] handled herself during that conversation[.]" (Id. at 47.)

---

[5]It is worth noting that three of the staff members that signed the grievance were African-American, one was Hispanic and the other of Pacific Island descent. (See Pl.'s Aff. ¶¶ 10-13, Pl.'s Dep., Ex. 20.)

Finally, Plaintiff points out a particular incident which occurred during a training meeting on November 11, 2003. (Pl.'s Dep. at 58.) Although Sams apparently does not remember this particular incident, Plaintiff claims that she "questioned [Sams] . . . about the petty cash or the certificates" in front of everyone at the meeting. Plaintiff acknowledged in deposition this incident "might have embarrassed [Sams]." (Id. at 162; Sams Dep. at 87.)

Defendants note that shortly after this meeting, Plaintiff allegedly repeated confidential information in violation of Sams' instructions. (Sams Dep. at 87-91.) Sams claims that she had a "general directive of confidentiality" concerning procurement meetings and that directive was that "what's said in this room stays in this room." (Mills Dep. at 30.) Another member of the staff testified that Sams "mentioned [the confidentiality directive] on more than one occasion in staff meetings." (Brooks Dep. at 54.) Plaintiff asserts that she did not repeat any information that was, in her view, "confidential." (Pl.'s Dep. at 88-92.) Of import, however, Plaintiff did admit that she discussed the cash reimbursement issue shortly after the meeting. (Id. at 91-94.)[6]

Shortly after this last incident, Sams testified that she became concerned with Plaintiff's continued employment and, as a result, consulted with the Human Resources department to ensure that Plaintiff's firing was conducted according to Augusta's policy. (Sams Dep. at 67, Ex. 7.) The next day, when Plaintiff arrived at work, a note was on her desk directing her

---

[6]It is undisputed that, later this same day, Plaintiff drafted a resignation letter and gave it to her supervisor, Doreen Holmes. (Pl.'s Dep., Ex. 10.) According to Plaintiff, Ms. Holmes agreed to hold the letter before submitting it to Augusta personnel. (Pl.'s Dep. at 58-60.)

to Sams' office, where Sams informed Plaintiff that she was letting her go. (Pl.'s Dep. at 104-05; Sams Dep., Ex. 5.)

During an extensive deposition, Sams testified as to the reasons why Plaintiff was terminated. (Sams Dep. at 59-60, 97, 111, 123-25.) Specifically, Sams testified that she terminated Plaintiff because of her violation of the following work rules: (1) absenteeism, (2) breach of confidentiality, (3) insubordination, and (4) violation of the dress code. (Id.; see also Sams Dep. Ex. 5.)

Plaintiff filed a complaint with the Equal Employment Opportunity Commission alleging that she was unlawfully terminated on the basis of her race and in retaliation for signing the grievance against Sams. (See Pl.'s Dep., Ex. 26.) Following the issuance of a right-to-sue letter, Plaintiff brought the instant suit. The Court resolves the matter as follows.

## II. **SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when there are no genuine issues of fact and the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, all facts and reasonable inferences are to be construed in favor of the non-moving party. Hogan v. Allstate Ins. Co., 361 F.3d 621, 625 (11th Cir. 2004). The party opposed to the summary judgment motion, however, "may not rest upon the mere allegations or denials in its pleadings. Rather, its responses . . . must set forth specific facts showing that there is a genuine issue for trial." Walker v. Darby, 911 F.2d 1573, 1576-77 (11th Cir. 1990).

### III. <u>DISCUSSION</u>

Plaintiff has expressly or implicitly abandoned certain claims in her complaint.[7] Therefore, the Court will only address those claims that remain outstanding. The remaining claims are: (1) Title VII, § 1983, and § 1981 claims for race discrimination; (2) First and Fourteenth Amendment claims through § 1983 for retaliatory termination for protected speech, and for deprivation of free speech and denials of due process and equal protection; and (3) Title VII claim for disparate treatment and retaliation. (Doc. no. 51 at 6; <u>see also</u> Doc. no. 56 at 1-2.)

### A. **Race Discrimination**

Plaintiff claims that, as the only Caucasian in the Department, she was discriminated against because she "felt" like her "work was under scrutiny," "her clothes were under scrutiny," and the "words [she] used were under scrutiny." (Pl.'s Dep. at 55.) Plaintiff predicates liability under Title VII on disparate treatment and race discrimination and also claims that Defendants' alleged discriminatory conduct violated § 1981 and § 1983.

The Eleventh Circuit has held that the "legal elements of the[se] claims are identical" and that "a plaintiff asserting either claim must prove intentional discrimination." <u>Stallworth v. Shuler</u>, 777 F.2d 1431, 1433 (11th Cir. 1985)(citations ommitted); <u>see also</u> <u>Standard v. A.B.E.L. Servs., Inc.</u>, 161 F.3d

---

[7]In determining which claims remain, the Court began by considering the claims asserted in the parties' Consolidated Pretrial Order filed on November 30, 2007. <u>See</u> Loc. R. 16.4 ("[T]he pretrial order shall supersede all prior pleadings, [and] shall control the trial of the case[.]") In the Consolidated Pretrial Order, Plaintiff asserts federal claims pursuant to 42 U.S.C. § 1983, § 1981, and Title VII (Doc. no. 51 at 6). Plaintiff's state law whistleblower claim has been abandoned. (<u>See also</u> doc. no. 56 at 5.)

1318, 1330 (11th Cir. 1998); Richardson v. Leeds Police Dep't, 71 F.3d 801, 805 (11th Cir. 1995).

Thus, to survive summary judgment on her racial discrimination claims under § 1981, § 1983 or Title VII, Plaintiff must show that there exists a genuine issue of material fact that Defendants intentionally discriminated against her based on race. See Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981) ("ultimate question" whether "the defendant intentionally discriminated"); St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993) ("ultimate fact" to be decided by jury is "intentional discrimination"); Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000) ("[t]he ultimate question is whether the employer intentionally discriminated").

A discrimination claim may be established in one of three ways: through direct evidence of discrimination, Wright v. Southland Corp., 187 F.3d 1287, 1293 (11th Cir. 1999); statistical evidence,[8] Alexander v. Fulton County, Ga., 207 F.3d 1303, 1327-28 (11th Cir. 2000); or circumstantial evidence-- commonly referred to as the McDonnell Douglas prima facie case, Wright, 187 F.3d at 1293.

Up front, it bears mentioning that Plaintiff's own testimony belies the existence of any direct evidence of discrimination against the Plaintiff. When specifically asked about her allegations, Plaintiff plainly admitted that Sams "never berated [her]" and "never called [her] any names[.]" (Pl.'s Dep. at 56.) The Eleventh Circuit has defined direct

_____

[8]Nothing in this record amounts to "statistical evidence" of discrimination. See Wilson, 376 F.3d at 1089 ("Statistics without any analytical foundation are 'virtually meaningless.'"); see also Howard v. BP Oil Co., 32 F.3d 520, 524 (11th Cir. 1994).

evidence of discrimination:

> as evidence which reflects a discriminatory or
> retaliatory attitude correlating to the
> discrimination or retaliation complained of by the
> employee. Direct evidence is evidence, that, if
> believed, proves [the] existence of [a] fact without
> inference or presumption. As our precedent
> illustrates, only the most blatant remarks, whose
> intent could mean nothing other than to discriminate
> on the basis of some impermissible factor constitute
> direct evidence of discrimination. If the alleged
> statement suggests, but does not prove, a
> discriminatory motive, then it is circumstantial
> evidence.

Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1086 (11th Cir. 2004) (internal citations and quotations omitted).

Where, as here, there is no direct or statistical evidence of discrimination, the appropriate framework for analyzing cases in which the plaintiff relies solely on circumstantial evidence of racial discrimination is the familiar burden-shifting approach established by McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973). See Richardson, 71 F.3d at 806 (employing the McDonnell Douglas framework of a Title VII discrimination case to a § 1983 discrimination case); see also Lockridge v. Bd. of Trustees of Univ. of Ark., 315 F.3d 1005, 1009-10 (8th Cir. 2003) (employing McDonnell Douglas framework to analyze disparate treatment claims brought pursuant to § 1981 and the Equal Protection Clause); English v. Colo. Dep't of Corr., 248 F.3d 1002, 1007 (10th Cir. 2001) ("'While McDonnell Douglas involved a Title VII claim for failure to hire, the analytical framework it pioneered applies equally to claims brought pursuant to Section 1981,' as well as to § 1983 claims based on allegations of racial discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment.").

The McDonnell Douglas formula encompasses both a *prima facie* case and a burden-shifting scheme. This method of proof seeks to narrow a plaintiff's case to its most basic elements. Burdine, 450 U.S. at 253. The plaintiff must first establish a *prima facie* case of discrimination, which thereby permits an inference of discrimination. If the plaintiff establishes a *prima facie* case, a feather-weight burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the action in question. Holifield v. Reno, 115 F.3d 1555, 1564 (11th Cir. 1997). If the defendant carries its burden, to survive summary judgment the plaintiff must then present sufficient evidence to demonstrate that the employer's proffered reason was merely a pretext for discrimination. Burdine, 450 U.S. at 256.

The plaintiff, however, at all times carries the ultimate burden of proving by the preponderance of the evidence that the challenged employment decision was motivated by discriminatory animus. See id. at 252-53. Accordingly, where the facts, as viewed in the light most favorable to a race-discrimination plaintiff, show both a *prima facie* case and legitimate, non-discriminatory reasons for any adverse employment decisions, the inquiry turns on whether the plaintiff's circumstantial evidence of discrimination creates a genuine issue of material fact as to whether the defendant intentionally discriminated against the plaintiff.[9]

---

[9]As explained by a recent case out of the Northern District of Georgia, the plaintiff must present "significantly probative evidence on the issue of pretext to avoid summary judgment because the burden of establishing such pretext remains with the plaintiff. This final stage of the McDonnell Douglas analysis merges with the plaintiff's ultimate burden of establishing by a preponderance of the evidence that the defendant employer unlawfully discriminated against [her]." Koger v. Texaco, Inc., 2007 WL 951752, *22 (N.D. Ga. March 28, 2007) (citation omitted).

## 1. Prima Facie Case

The Eleventh Circuit has explained that a *prima facie* case of race discrimination requires that a plaintiff prove that she was: (1) a member of the protected class; (2) qualified for the position; (3) subjected to an adverse employment action; and (4) replaced by a person outside the protected class or suffered from disparate treatment because of membership in the protected class. See <u>McDonnell Douglas Corp.</u>, 411 U.S. at 802.

In order to show "disparate treatment," Plaintiff must demonstrate that "her employer treated similarly situated employees outside of her protected class more favorably than she was treated."[10] <u>Burke-Fowler v. Orange County, Fla.</u>, 447 F.3d 1319, 1323 (11th Cir. 2006) (discriminatory discipline case). Stated somewhat differently, a plaintiff discharged for misconduct must show that the misconduct for which she was discharged was nearly identical to that engaged in by an employee outside the protected class whom the employer retained. See <u>Williams v. Motorola, Inc.</u>, 303 F.3d 1284, 1293 (11th Cir. 2002).

Here, the first three elements of a *prima facie* case of

---

[10]Plaintiff's attempt to characterize Augusta's facially-neutral probationary employment policy as an impermissible violation of 42 U.S.C. § 2000e-2(a)(2) and (d) is misguided. To the extent Plaintiff argues that this "is an appropriate case to use a disparate impact analysis," (doc. no. 56 at 26), the Eleventh Circuit has held that while different types and degrees of misconduct may warrant different types and degrees of discipline, a plaintiff does not show disparate impact racial discrimination or disparate treatment discrimination merely by citing statistics. See <u>E.E.O.C. v. Joe's Stone Crab, Inc.</u>, 220 F.3d 1263, 1276 (11th Cir. 2000). (observing that "holding employers liable for statistical imbalances *per se* is inconsistent with Title VII's plain language and statutory purpose"). Even generously construing Plaintiff's claim as a pattern and practice argument, the statistical evidence she provides is not strong enough to establish a *prima facie* case. <u>See id.</u> at 1287 ("A plaintiff may establish a pattern or practice claim through a combination of strong statistical evidence of disparate impact coupled with anecdotal evidence of the employer's intent to treat the protected class unequally.") (citation and quotations omitted).

discrimination are not disputed. Regarding the fourth element, Plaintiff proffers the testimony of staff member Maritza Rodriguez who testified that Doreen Holmes, Deborah Williams, and Phyllis Mills were allegedly "allowed to question Ms. Sams authority" while other staff members were not. (See Rodriguez Aff. ¶ 4.) However, the Rodriguez affidavit, even when viewed in a light most favorable to Plaintiff, fails to support Plaintiff's opposition to the motion for summary judgment. While Rodriguez identifies three of the four African-Americans as getting better treatment than the other African-American and non-African-Americans, Rodriguez also states that Plaintiff "was treated the same as the other employees in the Department during her brief period of employment," and "non African-Americans were not treated differently than African-American employees" by Sams. (Id.) Other than to make a nebulous reference to the names of three of her co-workers, Plaintiff makes no attempt to explain how she might be "similarly situated" to these three individuals, nor is any basis apparent from the record.[11]

Moreover, this statement, standing alone, fails to link any alleged favorable treatment to race and is misaligned with the evidence before this Court. Indeed, the record indicates that Sams "treated everyone equally bad," (Peredo Dep. at 61)

---

[11] In Burke-Fowler, the Eleventh Circuit explained that employees are valid comparators if they "'are involved in or accused of the same or similar conduct and are disciplined in different ways.'" 447 F.3d at 1323 (quoting Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999)). "[W]hile an exact correlation is unnecessary, the offenses and punishments must be 'fair congeners' so that apples are compared to apples." See Bethel v. Porterfield, 293 F. Supp. 2d 1307, 1321 (S.D. Ga. 2003) (citing Holifield, 115 F.3d at 1562), aff'd 116 Fed. Appx. 246 (Jul. 28, 2004). Plaintiff bears the burden of showing adequate similarities between his conduct and that of others outside his protected class. See Jones v. Gerwens, 874 F.2d 1534, 1541 (11th Cir. 1989).

and that, in at least one instance, she told all staff members that if they "couldn't do the job, that she would find someone who could" (Pl.'s Dep. at 62).[12]

Ultimately, the record establishes that Sams decided to terminate Plaintiff in response to behavior she deemed inappropriate. Although Plaintiff hollowly contends otherwise, she offers no facts to support her contention. Plaintiff has not shown that any other employee had problems with absenteeism, insubordination, confidentiality, or the dress code and was not terminated. Accordingly, there is no evidence to support Plaintiff's belief that Sams favored other staff members over her because of race. In short, Plaintiff has failed to identify a similarly-situated, non-Caucasian employee who was treated more favorably. This failure prevents her from establishing a *prima facie* case and is fatal to her claims. See Holifield, 115 F.3d at 1562; Greenfield v. City of Miami Beach, 844 F. Supp. 1519, 1526 (S.D. Fla. 1992).

Assuming *arguendo* that Plaintiff has established a *prima facie* case, Defendants have provided legitimate, nondiscriminatory reasons for its action. According to Defendants, Plaintiff was allegedly terminated for her (1) absenteeism,[13] (2) breach of confidentiality, (3) insubordination, and (4) violation of the dress code. Following these incidents, Sams simply implemented Augusta policy in

---

[12]Also of note, the content of both the grievance against Sams and Plaintiff's resignation letter reinforce the other evidence showing that Sams' managerial style negatively affected the Department as a whole without regard to race. (See Pl.'s Dep., Exs. 10, 20.)

[13]Defendants specifically point out that Plaintiff violated Augusta's attendance policy relating to sick leave and vacation. (See Defs.' Ex. E at 11; see also Armido v. Padlocker, Inc., 209 F.3d 1319, 1321 (11th Cir. 2000)(holding that absences which violate company policy are a legitimate explanation for terminating a probationary employee)).

13

making the decision to fire an at-will employee.

Because Defendants have proffered non-discriminatory and legitimate reasons for their actions, the inference of discrimination "'drops out of the picture.'" <u>Clark v. City of Macon, Ga.</u>, 860 F. Supp. 1545, 1552 (M.D. Ga. 1994) (quoting <u>St. Mary's Honor Center</u>, 509 U.S. at 511). Plaintiff must then produce sufficient evidence for a reasonable fact finder to conclude that the proffered reasons are pretextual. <u>Denney v. City of Albany</u>, 247 F.3d 1172, 1183 (11th Cir. 2001); <u>Chapman v. AI Transp.</u>, 229 F.3d 1012, 1037 (11th Cir. 2000). The Court should not concern itself with the reasonableness of Defendants' conduct. <u>Abel v. Dubberly</u>, 210 F.3d 1334, 1339 (11th Cir. 2000). Rather, the Court examines whether Plaintiff has presented evidence that a discriminatory reason more likely than not motivated Defendants in their conduct toward Plaintiff. <u>Miranda v. B & B Cash Grocery Store, Inc.</u>, 975 F.2d 1518, 1529 (11th Cir. 1992).

Plaintiff has come forward with no evidence to suggest that Defendants' reasons for their various actions are pretext for race discrimination. When asked specifically about whether she believed Sams' conduct toward her was motivated by racial animus, she replied:

> A: It's hard to describe a feeling. It's hard to put a feeling into a factual [ scenario] unless something - - unless there's an incident where someone calls a name or something like that.
>
> Q: That's what I'm talking about. In all fairness, this allegation that you are describing now, is it anything more than a feeling?
>
> A: Yes.
>
> Q: I'm asking you to list for me all the factual

evidence - -

A: Okay.

Q: - - that you contend supports your claim of racial discrimination.

A: My work was under scrutiny from Ms. Sams. My clothes were under scrutiny. The words I used were under scrutiny. I was very respectful. I called everyone "ma'am" and "sir" from my police and military work.

Q: When you say "under scrutiny," what do you mean?

A: I noticed that I was being watched.

Q: By whom?

A: Closely. By Ms. Sams.

Q: Okay? Anything else?

A: No, not that I can define.

(Pl.'s Dep. at 55-56.)[14]

Plaintiff's unsubstantiated opinion that any differential treatment was motivated by race is not an appropriate substitute for evidence. See Rollins v. TechSouth, Inc., 833 F.3d 1525, 1529 (11th Cir. 1987) ("[U]nsubstantiated assertions

---

[14]Plaintiff attached an affidavit to her Brief in Response to Summary Judgment, wherein she interjected, for the first time, new allegations of facts that she claims were discriminatory. She claims that "Ms. Sams would not let [her] open her window" and that she was told that her "food was 'stinky' and that she could not bring it into the office, where everyone else brought their food." (See Pl.'s Aff. ¶¶ 152-53.) These allegations were absent from Plaintiff's comprehensive deposition testimony in which she was thoroughly questioned about the facts supporting her claim of discrimination. To the extent these allegations are inconsistent with her deposition testimony they cannot create an issue of material fact as to require submission to a jury. See Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc., 736 F.2d 656, 658-59 (11th Cir. 1984). Moreover, these facts contradict Plaintiff's resignation letter, in which she indicated Sams' rules concerning the window and food pertained to the entire staff. (See Pl.'s Dep., Ex. 10.) As such, these allegations fail to show any discriminatory intent by Sams. The same conclusion is reached on Plaintiff's claims of disparate treatment regarding her food, window, and the dress code. See Greenfield, 844 F.Supp. at 1526; see also Jones v. Gerwens, 874 F.2d 1534, 1542 (11th Cir. 1989).

alone are not enough to withstand a motion for summary judgment."); <u>Carter v. Three Springs Residential Treatment</u>, 132 F.3d 635, 642 (11th Cir. 1998) (conclusory allegations without specific supporting facts have no probative value); <u>Young v. General Foods Corp.</u>, 840 F.2d 825, 830 (11th Cir. 1988)("[C]onclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [an employer] has offered . . . extensive evidence of legitimate, non-discriminatory reasons for its actions."). Plaintiff does not point to nor otherwise provide the Court with any evidence to substantiate her allegations.

Indeed, there is no reason from this record to conclude that Sams was motivated by discriminatory animus. In the instant case, Plaintiff's response brief (doc. no. 56) appears to emphasize Defendants' alleged discriminatory practices while streaming together various arguments and conclusions in an effort to show Defendants' reasons for her termination were pretextual. For example, Plaintiff attempts to refute her poor work attendance record by claiming that all of her vacation and sick days were either approved or supported by doctors' excuses or legitimate illness. Even if true, Plaintiff has failed to refute her excessive absences as a legitimate, non-discriminatory reason for her termination.

Moreover, Plaintiff's disagreement as to whether she actually violated Augusta policy is immaterial if she cannot show Defendants acted with discriminatory intent. In this context, the Eleventh Circuit has held that:

> If an employer discharges an individual under an honest belief pursuant to the information available to the employer that the employee has violated a

> policy of the employer, the fact that the employer's
> belief may be mistaken or wrong in fact does not mean
> that such belief cannot constitute a legitimate
> reason for the employer's discharge of the plaintiff.

Smith v. Papp Clinic, P.A., 808 F.2d 1449, 1452 (11th Cir. 1987).

Here, nothing in the record usurps Defendants' contention that they honestly believed Plaintiff violated their policies. See Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1363 (11th Cir. 1999) ("An employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct.").

Moreover, while termination may, to some, seem a draconian response given the level of Plaintiff's offenses, the reasonableness of Augusta's policies are not a consideration. See Abel, 210 F.3d at 1339. The Eleventh Circuit held that an employer "'may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long *as its action is not for a discriminatory reason.'*" Jones v. Bessemer Carraway Medical Center, 151 F.3d 1321, 1324 (11th Cir. 1998)(quoting Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1187 (11th Cir. 1984))(emphasis added). In other words, "[i]f the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it[;] . . . [q]uarreling with that reason is not sufficient." Wilson, 376 F.3d at 1088.

Defendants' documented evidence of Plaintiff's policy violations were adequate non-discriminatory reasons for her

discharge.[15] Plaintiff failed to present sufficient evidence to contradict the numerous reasons proffered by Defendants to convince this Court that a genuine issue of material fact exists as to whether Defendants' asserted reasons were a pretext to fire Plaintiff because she was a Caucasian. Given Plaintiff's failure to set forth evidence of discriminatory intent, her arguments disputing whether or not Augusta's policies were actually violated ring hollow.

In short, there no evidence upon which a reasonable fact finder could conclude Defendants were motivated by discriminatory bias based on race. In this case, Plaintiff merely describes her alleged mistreatment and asks the Court to conclude that it must have been related to her race. Absent any indicia of discriminatory intent on the part of Defendants, a necessary element of Plaintiff's discrimination claims based upon race, Defendants' motion for summary judgment on her Title VII, § 1981, and § 1983 claims must be granted.[16] See St. Mary's Honor Center, 509 U.S. at 511 (explaining that a plaintiff has

---

[15]Plaintiff argues that Defendants' reasons for her termination are full of "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions that a reasonable factfinder could find them unworthy of credence." See Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997). Plaintiff invites the Court to conclude that the distinctions between Sams' deposition testimony and the basis on which Defendants' have moved for summary judgment are of such significance that Defendants' reasons for her termination are shifting or otherwise pretextual. (See generally Doc. no. 56 at 14-15, 44-45.) Plaintiff's speculation, at best, only demonstrates that Sams chose not to give Plaintiff stated reasons at the termination meeting. As a probationary employee, however, Plaintiff was not entitled to and Sams was not required to give Plaintiff an explanation.

[16]Defendants argue that Plaintiff's claims under § 1983 are barred by the two-year statute of limitations. See Rozar v. Mullis, 85 F.3d 556, 561 (11th Cir. 1996) (holding that Georgia's two-year statute of limitations applies to Section 1983 actions). However, because Plaintiff has abandoned certain claims and the evidence of record cannot sustain Plaintiff's federal claims in any event, the Court will not address Defendants' statute of limitations argument any further.

the ultimate burden of pointing to evidence that the defendant intentionally discriminated on the basis of race).

**B. Title VII Retaliation[17]**

Plaintiff also contends "because retaliation for opposition to racially discriminatory practices was a motivating factor" in the decision to discharge Plaintiff, Defendants violated Title VII, § 1981, and § 1983. (See Compl. ¶ 53.) Defendants argue that Plaintiff's retaliation claims fail because there is no evidence of retaliation against Plaintiff for engaging in a protected activity.

To establish a *prima facie* case of retaliation under Title VII,[18] Plaintiff must show: (1) she engaged in statutorily protected expression; (2) an adverse employment action occurred; and (3) there was a causal link between the protected expression and the adverse employment action. Cooper v. Southern Co., 390 F.3d 695, 740 (11th Cir. 2004); Meeks v. Computer Assoc. Int'l, 15 F.3d 1013, 1021 (11th Cir. 1994). If "a plaintiff makes out a prima facie case of retaliation, the burden shifts to the defendant" to produce "legitimate reasons for the adverse employment action." Brochu v. City of Riviera Beach, 304 F.3d 1144, 1155 (11th Cir. 2002) (citation omitted).

---

[17]To the extent Plaintiff brings a § 1981 retaliation claim, the Court notes that, in the Eleventh Circuit, "the scope of relief available under § 1981 with respect to retaliation claims appears to remain largely an open question." Olmsted v. Taco Bell Corp., 141 F.3d 1457, 1463 (11th Cir. 1998). Regardless, the Eleventh Circuit has indicated in other contexts that claims brought under § 1981 or § 1983 should be analyzed under the same framework as Title VII claims because both statutes have the same requirements of proof. See Standard, 161 F.3d at 1330; see also Brown v. M.A.R.T.A., 2008 WL 60279, *6 (11th Cir. Jan. 7th, 2008).

[18]Title VII considers it an unlawful employment practice for an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

If the defendant does so, the plaintiff must then demonstrate that the employer's explanation is a pretext for retaliation. Id.

Assuming Plaintiff engaged in protected conduct, her claim fails for, among other things, a lack of causation.[19] There is simply no evidence that Plaintiff's termination bears any causal relationship to her signature on a staff grievance or any other conceivable statutorily protected activity. The third element of a retaliation claim requires a showing that the employer was actually aware of the protected conduct at the time it took adverse employment action. See Griffin v. GTE Fla., Inc., 182 F.3d 1279, 1284 (11th Cir. 1999). Although Sams testified that she did not know of the grievance at the time she terminated Plaintiff, Plaintiff nevertheless asks the Court to infer that Sams must have known about the grievance because she and another employee, Phyllis Mills, were "pretty tight," and it is likely that Mills told Sams about the grievance. (Sams Dep. at 51-52; doc. no. 56 at 13; see also Pl.'s Dep. at 101.) However, Ms. Mills testified that she never discussed the grievance with Sams. (Mills Dep. at 8.)

Plaintiff's tenuous position on this issue is unpersuasive and fatal to her *prima facie* case. See Goldsmith v. City of

---

[19]As a general matter, although Plaintiff need not prove that the conduct complained about was unlawful to bring a Title VII retaliation claim, she must show that she had "an objectively reasonable belief that [s]he opposed an unlawful employment practice." Little v. United Technologies, 103 F.3d 956, 959 (11th Cir. 1997); see also Clover v. Total Sys. Serv., Inc., 176 F.3d 1346, 1351 (11th Cir. 1999). Here, it is worth noting that it is unclear whether or not Plaintiff engaged in, or had an objectively reasonable belief that she engaged in, protected activity prior to her termination. Although the grievance uses the term "hostile work environment," the grievance is essentially a criticism of Sams' management style unrelated to race. (See Pl.'s Dep., Ex. 20.) As such, it is at least arguable whether or not this document makes any allegations of a Title VII violation. In any event, because Plaintiff's claim fails for a lack of causation, the Court need not address this matter further.

Atmore, 996 F.2d 1155, 1163 (11th Cir. 1993) (To establish a causual link, "[a]t a minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took adverse employment action."); see also Gupta v. Florida Bd. of Regents, 212 F.3d 571, 590 (11th Cir. 2000).

In short, Plaintiff has failed to show any activity which opposed racial discrimination, that Sams knew about the activity, or that Plaintiff was terminated because of the activity. Even if there were a causal link between Plaintiff's protected activity and her termination, Defendants are not liable because the evidence submitted shows that Plaintiff was terminated for legitimate, non-discriminatory reasons. Indeed, Plaintiff's retaliation claim suffers from the same fundamental flaw as her race discrimination claim; Plaintiff's failure to attribute any retaliatory animus to Sams. Of course, Plaintiff points to the close temporal proximity between her protected activity and her termination as proof of retaliation. The problem with this argument is that it is simply a restatement of her *prima facie* case, and not a response to Defendants' justification for her termination. Accordingly, Plaintiff's Title VII retaliation claim fails as a matter of law.

## C. Section 1983 First Amendment Retaliation

Next, Plaintiff claims that Defendants violated the First Amendment by terminating her for engaging in protected speech. Specifically, Plaintiff contends that her question about the petty cash issue at the November 11th staff meeting which "challenged possible official corruption" constituted protected speech. (See Doc. no. 56 at 19-20, 31-32.)

The Supreme Court has provided the analysis applicable to

21

Plaintiff's claim: "In the particularized context of government employees exercising their First Amendment rights, . . . the appropriate analysis is the balancing test established in Pickering v. Board of Education of Township High School District 205, 391 U.S. 563, 88 S. Ct. 1731, 20 L.Ed.2d 811 (1968)." Thaeter v. Palm Beach County Sheriff's Office, 449 F.3d 1342, 1355 (11th Cir. 2006). Under this test, the government employee arguing that an adverse employment decision violated his First Amendment rights must show:

> 1) that the speech can be fairly characterized as relating to a matter of public concern, 2) that [ her] interests as a citizen outweigh the interests of the State as an employer, and 3) that the speech played a substantial or motivating role in the government's decision to take an adverse employment action.

Akins v. Fulton County, Ga., 420 F.3d 1293, 1303 (11th Cir. 2005). Once an employee has met this burden, it falls to the employer to show that it would have taken the adverse employment action irrespective of the First Amendment conduct. Id.

The Supreme Court has clarified the Pickering test by holding "that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Garcetti v. Ceballos, 547 U.S. __, 126 S. Ct. 1951, 1960 (2006).

First, Plaintiff never expressed her views to the public at large, and the speech at issue undisputedly concerned the subject matter of her employment. (Pl.'s Dep. at 178-79.) Although these facts regarding the context of Plaintiff's

speech are not dispositive, see Garcetti, 547 U.S. at __, 126 S. Ct. at 1959; D'Angelo v. School Bd. of Polk County, Fla., 497 F.3d 1203, 1211 (11th Cir. 2007), they do not weigh in Plaintiff's favor.

The threshold question is whether Plaintiff spoke as a citizen on a matter of public concern. See, e.g., Battle v. Board of Regents for Ga., 468 F.3d 755, 760 (11th Cir. 2006). Here, Plaintiff's speech was clearly made as an employee, rather than as a private citizen concerned about corruption. "Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen." Garcetti, 547 U.S. at __, 126 S. Ct. at 1960. In addition, those parts of Plaintiff's speech which touched matters of public concern--"abusive practices, including waste of public resources"--were made during the performance of her official job duties. In this regard, Plaintiff has produced no evidence to support for her accusations of corruption, fraud, and deliberate waste.[20]

It is immaterial that Plaintiff contends Sams' instructions were erroneous or even unfair. In this regard, the instant case bears no meaningful distinction from Garcetti, in which a deputy district attorney raised concerns to his superiors about inaccuracies in an affidavit used to procure a search warrant. 547 U.S. at __, 126 S. Ct. at 1956. In sum,

---

[20]See Kurtz v. Vickrey, 855 F.2d 723, 729 (11th Cir. 1988) (explaining that an employee's "profession of public concern loses force when . . . he [takes] no affirmative steps to remedy, or to inform the public at large about, the problems with which he [is] so gravely concerned"); Nero v. Hosp. Auth. of Wilkes County, 86 F. Supp.2d 1214, 1225 (S.D. Ga. 1998) (Bowen, J.) ("When an employee communicates matters in the 'normal course of his duties' these matters are communicated as an employee and are not protected speech.").

Plaintiff has not shown that she was engaging in protected First Amendment conduct.[21]

## D. Equal Protection & Due Process Claims

Next, the Court addresses Plaintiff's equal protection claims. Here, Plaintiff pleads no additional allegations, but rather argues that her First Amendment claims also evince a violation of the Equal Protection Clause. Thus, the Court rejects Plaintiffs equal protection claims as nothing more than a restatement of her First Amendment claims. See <u>Watkins v. Bowden</u>, 105 F.3d 1344, 1354-55 (11th Cir. 1997).

That said, Plaintiff's argument that the Purchasing Department constituted a "forum" in which she had a "right" to ask questions may be best understood as an argument that she was subjected to viewpoint discrimination. It is true that "[w]hen the government selectively excludes speakers from a forum, Equal Protection interests as well as First Amendment interests may be implicated." <u>Cook v. Gwinnett County School Dist.</u>, 414 F.3d 1313, 1321 (11th Cir. 2005). Nevertheless, Plaintiff's argument that the Purchasing Department's office and training room constituted a "forum" where she could say whatever she wanted without consequence is unpersuasive. Consequently, the Court rejects Plaintiff's retaliation claims, whether viewed as arising under the First Amendment or the Equal Protection Clause.

---

[21]Plaintiff points to the close temporal proximity between her allegedly protected speech and her termination as proof of retaliation. However, even if Plaintiff's speech could be characterized as public concern, and assuming her interests outweighed those of her employer, Plaintiff was terminated for reasons unrelated to her speech. Having determined Plaintiff's speech is not afforded protection under the First Amendment, the Court notes that, although abandoned, Plaintiff's First Amendment "association" claim fails for similar reasons. See <u>D'Angelo</u>, 497 F.3d at 1212-13 (Extending the <u>Garcetti</u> analytical framework to associational activity claims under the First Amendment).

In this context, the Court also notes that Plaintiff has no viable claim under the Due Process Clause. First, Plaintiff had no substantive due process interest in her employment. "'Because employment rights are state-created rights and are not "fundamental" rights created by the Constitution, they do not enjoy substantive due process protection.'" Silva v. Bieluch, 351 F.3d 1045, 1047 (11th Cir. 2003)(quoting McKinney v. Pate, 20 F.3d 1550, 1560 (11th Cir. 1994)).

Second, a person is not entitled to procedural due process unless she is deprived of an interest in life, liberty, or property. Bd. of Curators, Univ. of Mo. v. Horowitz, 435 U.S. 78, 84 (1978). The relevant question is whether Plaintiff was deprived of a protected property or liberty interest. See, e.g., Faucher v. Rodziewicz, 891 F.2d 864, 869 (11th Cir. 1990). An at-will employee generally has no property interest in her job; thus, she is not entitled to a hearing or other procedural protections. See, e.g., Ross v. Clayton County, Ga., 173 F.3d 1305, 1308 (11th Cir. 1999). Plaintiff points out no basis upon which to deviate from this general rule. In sum, Plaintiff's due process claims fail as a matter of law.

**E. Official Capacity**

Plaintiff's claims against Sams in her official capacity are considered the functional equivalent of a claim against the governmental unit for which she is employed. See Kentucky v. Graham, 473 U.S. 159, 166 (1984) ("[A]n official capacity suit is, in all respects other than name, to be treated as a suit against the entity."); Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991). For Augusta to be held liable, Plaintiff must show that the constitutional violations occurred as a result of "an official government policy, the actions of an

official fairly deemed to represent government policy, or a custom or practice so pervasive and well-settled it assumes the force of law." <u>Denno v. School Bd. of Volusia County</u>, 218 F.3d 1267, 1276 (11th Cir. 2000), <u>cert. denied</u>, 531 U.S. 958 (2000).

In this case, as discussed above, Plaintiff has not sufficiently established a constitutional deprivation. Without an underlying constitutional deprivation, the Court need not consider whether there was a government policy, custom or practice causing such deprivation. <u>See</u> <u>Graham v. Conner</u>, 490 U.S. 386, 394 (1989); <u>Los Angeles v. Heller</u>, 475 U.S. 796, 799 (1986).

## IV.  CONCLUSION

Upon the foregoing, Defendants' motion for summary judgment (doc. no. 28) is **GRANTED**. The Clerk is directed to **CLOSE** this case and **ENTER FINAL JUDGMENT** in favor of Defendants.

**ORDER ENTERED** at Augusta, Georgia, this __29th__ day of January, 2008.

_____
HONORABLE LISA GODBEY WOOD
UNITED STATES DISTRICT JUDGE